UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X
JEFFRY ZICCARELLI,

                    Plaintiff,

                                            15 Civ. 9307 (DAB)
                                            MEMORANDUM & ORDER

         v.

NYU HOSPITALS CENTER, ET AL.,

                    Defendants.
-----------------------------------------------X
DEBORAH A. BATTS, United States District Judge.

         On August 24, 2015, Plaintiff Jeffry Ziccarelli filed

suit against Defendants NYU Hospitals Center a/k/a NYU Langone

Medical Center ("NYU") and Cheryl Long, Sheryl Bushman, Nader

Mherabi, and Nancy Beale (collectively the "Individual

Defendants") for alleged interference with Plaintiff's rights

under the Family and Medical Leave Act ("FMLA") (Count I), 29

U.S.C. §§ 2601-54, FMLA retaliation (Count II), improper

disclosure of medical information (Count III), and violation of

the New York City Human Rights Law (Count VII), N.Y.C. Admin.

Code §§ 8-101-1104. Plaintiff also brings charges against NYU

for negligence (Count IV), gross negligence (Count V), and

violation of the Americans with Disabilities Act ("ADA") (Count

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/29/17

VI), 42 U.S.C. § 12112(d)(4)(A).[1] On November 25, 2015, NYU, Mherabi, and Beale removed the case to this Court. NYU, Mherabi, and Beale then moved to dismiss the FMLA counts (Counts I and II) as against Mherabi and Beale, the improper disclosure of medical information (Count III) as against NYU, Mherabi, and Beale, and negligence (Count IV), gross negligence (Count V), and ADA (Count VI) charges as against NYU. Bushman and Long subsequently filed a Motion to Dismiss the FMLA counts (Counts I and II) as against Bushman and the improper disclosure of medical information charge (Count III) as against Bushman and Long. In opposing both Motions to Dismiss, Plaintiff filed a cross Motion for Leave to Amend his Complaint, attaching a Proposed Amended Complaint (ECF No. 21; Pl.'s 2d Opp. Ex. B ("PAC").) For the following reasons, Defendants' Motions to Dismiss Counts I, II, and III as against Mherabi, Beale, and Bushman. Defendants' Motions to Dismiss Count III as against NYU and Long and Counts IV and V as against NYU are DENIED. Plaintiff's Motion for Leave to Amend is DENIED because the specific proposed amendments would be futile as to Counts I and II as against Mherabi, Beale, and Bushman and Count III as against all Defendants, but Plaintiff is GRANTED leave to amend

---

[1] Plaintiff's ADA claim was included in the initial Complaint but removed from the Proposed Amended Complaint. Accordingly, the Court does not address Count VI in this Memorandum & Order.

to include additional facts that could sustain the charges
discussed contained in Counts I and II against Mherabi, Beale,
and Bushman and Count III against all Defendants.

I.   BACKGROUND

For the purpose of the Motions to Dismiss, the Court
assumes as true the factual allegations in Plaintiff's Complaint
and Proposed Amended Complaint.

This suit arises from Plaintiff's employment at NYU and his
treatment as a patient at NYU. Plaintiff was employed by NYU for
almost thirty years until his resignation on June 20, 2014.
(Compl. ¶¶ 8, 84.) Plaintiff was promoted to Application Lead on
the Epic Lab team in June 2012. (Id. ¶ 9.) Allegedly, Plaintiff
received consistent praise and positive reviews at NYU through
the summer of 2013. (Id. ¶¶ 11-14.)

Plaintiff provides scant information in the Complaint about
Individual Defendants' roles at NYU but specifies that he began
reporting to Long, the Director of the Orders Team, while on
FMLA leave. (Id. ¶ 18.)

A. Plaintiff's FMLA Leave

On April 13, 2013, Plaintiff was injured and applied for
FMLA leave so that he could have surgery to repair a proximal
humerus fracture and a rotator cuff tear and do subsequent
physical therapy. (Compl. ¶ 15.) Plaintiff's request for leave

3

was granted, and he began his leave on April 23, 2013. (Id. ¶ 16.)

While Plaintiff was on FMLA leave, the structure of his team changed, and he began reporting directly to Long. (Id. ¶ 18.) Despite the fact that Plaintiff was on leave, Long allegedly began to require him to work remotely in July 2013, including sending him work-related emails and forcing him to participate in work-related phone calls. (Id. ¶¶ 19-23.) She also began to pressure him to return to work, even though he was allegedly still undergoing therapy, taking medication that affected his ability to work, and had not been medically cleared to return to work. (Id. ¶ 20.) Long told Plaintiff that she would limit his hours if he returned to work before the end of his leave. (Id. ¶ 25.) Because of the pressure, Plaintiff returned to work early, on July 1, 2013, despite the fact that he was not fully recovered. (Id. ¶ 27.) Shortly thereafter, Long began to force Plaintiff to work long hours and on weekends. (Id. ¶ 28.)

Plaintiff was concerned with the impact his early return to work and the long hours were having on his recovery. (Compl. ¶¶ 29-31.) Although he expressed these concerns to Long, she was allegedly completely dismissive of his concerns. (Id. ¶¶ 32-33.) Because of his medical condition and the effect his work had on

4

his recovery, Plaintiff had to take a second FMLA leave from late August to early October 2013. (Id. ¶ 36.)

### B. Improper Access to and Disclosure of Plaintiff's Medical Information

In connection with his injury and subsequent surgery, Plaintiff underwent medical treatment at NYU beginning on April 13, 2013. (Id. ¶ 43.) These services were allegedly unrelated to his employment at NYU and were available to the public. (Id. ¶ 38.) His medical records were part of NYU's electronic database. (Id. ¶ 40.) These records are allegedly accessible to hundreds of NYU employees, including Individual Defendants. (Id. ¶ 46.)

According to the Complaint, NYU management had previously been informed that employees had viewed patient records— the confidential medical records were accessible by employees without authority, permission, or consent to view those records. (Id. ¶ 48.) Despite knowing this, NYU allegedly failed to modify the system so that it would have a record of which employees had viewed particular records. (Id. ¶ 49.)

Even though Plaintiff's doctor submitted reports directly to NYU in connection with his FMLA leave, Long allegedly accessed and reviewed Plaintiff's confidential medical records to try to find evidence that he was capable of returning from his leave and/or to undermine or challenge his FMLA rights and benefits. (Id. ¶¶ 37, 52-54.) In late May 2013, Long called

Plaintiff at home, initiating a conversation about his leave and recovery and making statements that indicated knowledge that Plaintiff had begun physical therapy, despite the fact that Plaintiff had not disclosed this information to Long. (Id. ¶ 50.)

C. FMLA Retaliation

After Plaintiff's return from both FMLA leaves, Long allegedly began to treat him harshly and unfairly, give him a greater workload than he had had prior to leave, and berate him. (Id. ¶ 34.) Bushman also allegedly began to harass Plaintiff, because she was friends with Long and because Plaintiff witnessed her sexually harassing another employee.[2] (Id. ¶¶ 56-59.) Plaintiff began to discuss these working conditions and Long's treatment of him with Human Resources in August 2013. (Id. ¶¶ 35, 63.) Plaintiff also sent a letter to Human Resources in October 2013 about the alleged retaliation and hostile work environment, requesting mediation between him, Long, and Bushman, but NYU did nothing to respond to the letter nor to stop Long and Bushman's conduct. (Id. ¶¶ 63-64.)

---

[2] Plaintiff also allegedly witnessed Bushman sexually harassing another employee and reported this to NYU's Human Resources. (Id. ¶¶ 56-57.) Plaintiff charges retaliation under New York City's Human Rights Law against all Defendants in Count VII. (Id. ¶¶ 125-34.) Because Defendants do not seek to dismiss Count VII, the Court does not discuss the related allegations here.

In October 2013, Long gave Plaintiff a negative performance review, allegedly in retaliation for his complaints and his exercise of his FMLA rights, rather than based on his actual work performance. (Id. ¶¶ 66-74.) Plaintiff alleges that Beale and Mherabi aided and abetted Long and Bushman's conduct and that Beale conspired with Long to fabricate the negative work assessment. (Id. ¶¶ 75-76.) Because of the negative performance evaluation, Plaintiff was denied promotional opportunities. (Id. ¶ 77.)

On January 27, 2014, NYU sent Plaintiff a letter saying that Plaintiff was being laid off because his position was being eliminated. (Id. ¶ 78.) The other employee who held the same position, however, was retained. (Id. ¶ 79.) Plaintiff then met with Human Resources, who told him that he could either accept a limited severance package or accept a demotion to Senior Clinical Analyst 1. (Id. ¶ 80.) Plaintiff chose to accept the demotion. (Id. ¶ 81.) Even after he was demoted, Long continued to harass him. (Id. ¶ 82.) According to Plaintiff, he was constructively terminated as a result of the constant harassment and threats to his job security when he resigned on June 20, 2014. (Id. ¶ 84.)

II.   MOTION TO DISMISS

   A. Legal Standard for Motion to Dismiss Pursuant to Rule
      12(b)(6)

   For a complaint to survive a motion brought pursuant to

Federal Rule of Civil Procedure 12(b)(6), the plaintiff must

have pleaded "enough facts to state a claim to relief that is

plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for
> the misconduct alleged. The plausibility standard is not
> akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted
> unlawfully. Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and
> plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,

550 U.S. at 556-57). "[A] plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." Twombly, 550 U.S. at 555 (internal

quotation marks and citation omitted). "Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly,

550 U.S. at 557). The Supreme Court further stated,

> In keeping with these principles a court considering a
> motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U.S. at 678, which, like the complaint's "labels and conclusions," Twombly, 550 U.S. at 555, are disregarded. Nor should a court "accept [as] true a legal conclusion couched as a factual allegation." Id. In resolving a 12(b)(6) motion, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

B. FMLA Interference and Retaliation – Counts I and II

Plaintiff alleges that Defendants interfered with his Family and Medical Leave Act rights by sending him work assignments while he was out on leave, pressuring him to return from leave, and by forcing him to work long hours after he returned from leave despite the proposal that he work limited hours. Plaintiff also alleges that Defendants retaliated against him when he exercised his rights under the FMLA by harassing him, demoting him, and ultimately constructively discharging him. Mherabi, Beale, and Bushman move to dismiss Counts I and II, arguing that Plaintiff fails to allege sufficient facts of the FMLA violations as against them. The question is whether these three Individual Defendants acted as Plaintiff's employer for purposes of the FMLA.

### 1.    Employers under the FMLA

Under the FMLA, employees are entitled to "reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act. 29 U.S.C. § 2615(a)(1). "The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for

having exercised or attempted to exercise FMLA rights." 29

C.F.R. § 825.220(c).

An individual may be held liable under the FMLA only if she

is an "employer," which includes "any person who acts, directly

or indirectly, in the interest of an employer to any of the

employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I).

Whether an individual is an "employer" for the purposes of the

FMLA is determined by the economic reality test, which the

Second Circuit adopted in Graziadio v. Culinary Institute of

America, 817 F.3d 415 (2d Cir. 2016). "Under this test, courts

ask 'whether the alleged employer possessed the power to control

the worker in question, with an eye to the "economic reality"

presented by the facts of each case.'" Id. at 422 (quoting

Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir.

1999)) (internal alterations omitted).

> To do so, they consider a nonexclusive and overlapping
> set of factors, intended to encompass the totality of
> circumstances. These factors include whether the alleged
> employer (1) had the power to hire and fire the
> employees, (2) supervised and controlled employee work
> schedules or conditions of employment, (3) determined
> the rate and method of payment, and (4) maintained
> employment records. No one of the four factors standing
> alone is dispositive and any relevant evidence may be
> examined so as to avoid having the test confined to a
> narrow legalistic definition.

Id. at 422-23 (internal citations, quotation marks, and

alterations omitted). In short, courts ask "whether the putative

employer 'controlled in whole or in part plaintiff's rights

under the FMLA.'" Id. at 423 (quoting Noia v. Orthopedic Assocs. of Long Island, 93 F. Supp. 3d 13, 16 (E.D.N.Y. 2015)).

Courts in this District applying the test have noted that it "is a factual inquiry that does not bear on the sufficiency of pleadings." Smith v. Westchester County, 769 F. Supp. 2d 448, 475 (S.D.N.Y. 2011) (quoting Augustine v. AXA Fin., Inc., No. 07-CV-8362, 2008 WL 5025017, at *3 (S.D.N.Y. Nov. 24, 2008)). "Thus, to survive a motion to dismiss, Plaintiff need not allege sufficient facts to satisfy the economic reality test; instead, he must simply 'plead that the proposed Individual Defendants had substantial control over the aspects of employment alleged to have been violated." Id. at 475-76 (quoting Augustine, 2008 WL 5025017, at *4) (internal alterations omitted).

### 2.   Application to FMLA Charges Against Beale, Mherabi, and Bushman

Nearly all the facts alleged in Plaintiff's Complaint related to FMLA violations implicate Long rather than Beale, Mherabi, and Bushman. Plaintiff alleges that "Beale aided and abetted Long's and Bushman's discriminatory and retaliatory conduct, and conspired with Long to fabricate the false and inaccurate performance review." (Compl. ¶ 75.) Plaintiff's allegations of aiding and abetting are legal conclusions unsupported by facts. This allegation does not support the

proposition that Beale had substantial control over Plaintiff's FMLA leave.

Plaintiff similarly alleges that "Mherabi aided and abetted Long's, Bushman's and/or Beale's discriminatory and retaliatory conduct, and failed or refused to act to stop such unlawful discriminatory and retaliatory reviews despite [P]laintiff's request that [he] take steps to stop such conduct." (Id. ¶ 76.) Like Plaintiff's allegations against Beale, these are legal conclusions. Even if Plaintiff requested that Mherabi take action to stop this conduct, there are no allegations related to Mherabi's control over Plaintiff's FMLA leave nor the four factors listed in the economic reality test.

Plaintiff also alleges that Bushman began to harass him because she was friends with Long and because Plaintiff witnessed her sexually harassing another employee. (Id. ¶¶ 56-59.) Plaintiff can pursue claims against Bushman for her alleged retaliation following his witnessing and reporting of her sexually harassment of another employee under the New York Human City Rights Law, but not under the FMLA. Defendants do not seek to dismiss Count VII of the Complaint. Bushman's friendship with Long is not enough to make her individually liable under the FMLA.

Accordingly, Plaintiff's FMLA claims in Counts I and II as against Beale, Mherabi, and Bushman are DISMISSED.

3.    FMLA Interference

To make out a prima facie case for FMLA interference under 29 U.S.C. § 2615(a)(1), a plaintiff must establish:

> 1) that she is an eligible employee under the FMLA; 2) that defendant is an employer as defined in FMLA; 3) that she was entitled to leave under FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under FMLA.

Geromanos v. Columbia Univ., 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004); see also Smith, 769 F. Supp. 2d at 465 (applying this standard in ruling on a motion to dismiss).

Here, the parties do not address whether Plaintiff has asserted sufficient facts to survive a motion to dismiss on these grounds. The Court does not address these elements at length as a result but is satisfied that Plaintiff sufficiently plead facts as to FMLA interference. Most of these factors would relate to NYU's liability for FMLA interference, but NYU has not moved to dismiss Count I of the Complaint. Regardless of whether Plaintiff has made out these elements as to NYU or Long, Plaintiff has not alleged that Beale, Mherabi, or Bushman took specific actions to deny her benefits to which she was entitled under the FMLA. Accordingly, Count I is DISMISSED as against Beale, Mherabi, and Bushman.

14

4.    FMLA Retaliation

To make out a prima facie case for FMLA retaliation, a plaintiff must establish: "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Graziadio, 817 F.3d at 429 (quoting Donnelly v. Greenburgh Cent. Sch. Dist. No. 7, 691 F.3d 134, 147 (2d Cir. 2012)). However, at the motion to dismiss stage, a plaintiff

> need not plead specific facts establishing a prima facie case of discrimination in order to survive a motion to dismiss. . . . Instead, to state an FMLA retaliation claim, Plaintiff need only show that his claims are plausible under Iqbal and Twombly, by pleading facts sufficient to state a claim to relief that is plausible on its face.

Smith, 769 F. Supp. 2d at 469 (internal citations, quotations, and alterations omitted).

As with interference, the parties do not address whether Plaintiff has asserted sufficient facts to survive a motion to dismiss on these grounds. The Court does not address these elements at length as a result but is satisfied that Plaintiff sufficiently plead facts as to FMLA retaliation. Regardless, Plaintiff does not allege any specific involvement in retaliatory actions by Beale, Mherabi, or Bushman, so Count II is DISMISSED as against them.

15

C. Tort Claims and Workers Compensation Preclusion – Counts
   III, IV, and V

In Count III, Plaintiff asserts that Defendants improperly accessed and disclosed his medical information from his records as an NYU patient. Related to this charge, in Counts IV and V, Plaintiff also alleges that NYU was negligent and grossly negligent in failing to put in place proper procedures to prevent the wrongful access to and disclosure of Plaintiff's medical information and in failing to supervise and train its employees not to access patient information for purposes other than treatment. In their Motions to Dismiss, Defendants argue that these tort claims are barred by the New York Workers' Compensation Law ("WCL") and, in the alternative, that Plaintiff does not allege sufficient facts to survive a Rule 12(b)(6) motion to dismiss. Plaintiff counters that these claims are not barred the WCL because his injuries occurred in his capacity as an NYU patient, not as an NYU employee, and that he has alleged sufficient facts to survive a motion to dismiss.

1.    Legal Standard for WCL Preclusion

As an initial matter, the parties agree that common law improper disclosure of medical information is a tort. E.g., Doe v. Cmty. Health Plan-Kaiser Corp., 268 A.D.2d 183, 186–87 (N.Y. App. Div. 3d Dep't 2000) ("[T]he duty not to disclose confidential personal information springs from the implied

16

covenant of trust and confidence that is inherent in the physician-patient relationship, the breach of which is actionable as a tort."), overruled on other grounds by Doe v. Guthrie Clinic, Ltd., 22 N.Y.3d 480 (N.Y. 2014). There is a private right of action for common law improper disclosure of medical information. See id.; Doe v. Guthrie Clinic, Ltd., 710 F.3d 492, 494 (2d Cir.), certified question accepted, 21 N.Y.3d 895 (N.Y. 2013), and certified question answered, 22 N.Y.3d 480 (N.Y. 2014). Plaintiff's claims against NYU for negligence and gross negligence are also tort claims. The first question then is whether Plaintiff's claims in Counts III, IV, and V are precluded by the New York Workers' Compensation Law.

Under the WCL, workers who suffer injury "arising out of and in the course of the employment" are entitled to compensation. N.Y. Workers' Comp. Law ("N.Y.W.C.L.") § 10(1). The right to compensation under the WCL is the exclusive remedy available to an employee for accidental injuries arising out of and in the course of employment. See N.Y.W.C.L. §§ 11, 29; Maas v. Cornell Univ., 253 A.D.2d 1, 3 (N.Y. App. Div. 3d Dep't), aff'd, 94 N.Y.2d 87 (N.Y. 1999). When an employee is "injured or killed by the negligence or wrong of another in the same employ," the employee's injuries fall within the exclusive

remedy provision. N.Y.W.C.L. § 29(6).[3] New York courts have "construed [the exclusivity] requirement liberally, in order to effectuate 'the economic and humanitarian' objectives of the act." <u>Lemon v. N.Y.C. Transit Auth.</u>, 72 N.Y.2d 324, 326 (N.Y. 1988). Because Plaintiff's claims do not fall within another enumerated exception, such as intentional torts, <u>see</u> <u>Torres v. Pisano</u>, 116 F.3d 625, 640 (2d Cir. 1997), the issue is whether his alleged injuries arose out of and in the course of his NYU employment.

Under WCL § 21, there is a rebuttable presumption that an injury arose out of the scope of employment. In New York, "only if an injury flows as a natural consequence of the employee's duties can it be said to arise out of the employment." <u>Lemon</u>, 72 N.Y.2d at 326-27. This is a two-part test:

> The injury must be one arising out of the employment, that is, it must be a natural incident to the work one of the risks connected with the employment, flowing therefrom as a natural consequence and directly connected with the work. It must also arise in the course of the employment, that is, it must have been received while the employee was doing the work for which he was employed.

<u>Malacarne v. City of Yonkers Parking Auth.</u>, 41 N.Y.2d 189, 193 (N.Y. 1976) (internal quotations and alterations omitted). There

---

[3] This is known as the "fellow-employee rule." <u>Marange v. Slivinski</u>, 257 A.D.2d 427, 428 (N.Y. App. Div. 1st Dep't 1999).

must be "a causal relationship or nexus between the accident and the employment." Lemon, 72 N.Y.2d at 327.

Plaintiff cites cases, such as Marange v. Slivinski, 257 A.D.2d 427 (N.Y. App. Div. 1st Dep't 1999), which apply the fellow-employee rule in the context of an employee receiving medical care. In these cases, courts consider several factors in determining whether a case is barred by the Workers Compensation Law: whether "the doctor's professional services were offered and paid for by the employer; [whether] the services were not available to the general public; and [whether] plaintiff obtained the services not as a member of the public but only as a consequence of his employment." Id. at 428 (citing Garcia v. Iserson, 33 N.Y.2d 421, 422 (N.Y. 1974), abrogated on other grounds by O'Rourke v. Long, 41 N.Y.2d 219 (N.Y. 1976)).

### 2.    Application to Plaintiff's Tort Claims

#### a. Improper Disclosure of Medical Information and Workers' Compensation Law Preclusion

Plaintiff's Complaint states that Long, "ignoring Plaintiff's doctor's reports submitted to NYU in connection with Plaintiff's FMLA leave, accessed and reviewed Plaintiff's confidential medical records for the purpose of trying to find evidence that Plaintiff was capable of returning from his FMLA leave and/or undermining or challenging Plaintiff's FMLA rights and benefits." (Compl. ¶ 37.)

In some respects, Plaintiff's alleged injury arose out of his employment with NYU because Long was allegedly motivated to access his medical records in order to pressure him to return to work early. In this way, Plaintiff's employment with NYU was an actual or but-for cause of his injury. In some cases, New York courts have looked into the motives behind a tort to determine whether the tort was work-related and thus precluded by the WCL. See Gutierrez v. Courtyard by Marriott, 848 N.Y.S.2d 744, 745–46 (N.Y. App. Div. 3d Dep't 2007); Melo v. Jewish Bd. of Family & Children's Servs., Inc., 45 A.D.3d 998, 998–99 (N.Y. App. Div. 3d Dep't 2007). Here, the motives were seemingly work-related.

In Lemon v. New York City Transit Authority, 72 N.Y.2d 324 (N.Y. 1988), the New York Court of Appeals held that a transit worker, who had a free transit pass by virtue of her employment, was not barred by the WCL from suing her employer after she injured her knee as a result of falling in a subway station after her shift was over and she had taken the subway home. Id. at 330 ("That claimant also coincidentally was an employee of the Transit Authority, standing alone, is not sufficient to create a relationship between her accident and her employment."). The Court noted that the employer did not "derive[] any benefit because claimant utilized her pass to commute," calling the pass "a fringe benefit, equivalent to added compensation." Id. at 329. By contrast, in this case, if

20

Long accessed Plaintiff's medical records for the purpose of

challenging his FMLA rights, NYU would derive a benefit:

Plaintiff's additional time at work. Cf. Guthrie Clinic, 710

F.3d at 495 ("An employee's conduct ordinarily cannot be

attributed to the employer, however, if it was motivated solely

by personal reasons 'unrelated to the furtherance of the

employer's business.'" (quoting Horvath v. L & B Gardens, Inc.,

932 N.Y.S.2d 184, 185 (N.Y. App. Div. 2d Dep't 2011))).

However, the medical services received by Plaintiff were

not related to his employment. The services were available to

members of the general public[4] and were to treat injuries not

sustained in the course of employment. While the improper

disclosure of medical information may not have occurred had

Plaintiff not been employed by NYU, the alleged injury did not

occur while Plaintiff was engaged in work-related duties. Cf.

Koerner v. Orangetown Police Dep't, 68 N.Y.2d 974, 975 (N.Y.

1986) ("The death clearly arose out of the employment because

---

[4] The Court finds this probative in relation to the issue of
whether the injuries had a causal relationship with Plaintiff's
employment at NYU. However, although the medical services
Plaintiff received at NYU were not paid for by NYU, the services
were available to the general public, and Plaintiff did not
obtain the services as a consequence of his employment, the
fellow-employee rule cases cited by Plaintiff are factually
inapposite because they involve malpractice rather than improper
disclosure cases. See, e.g., Marange, 257 A.D.2d at 428;
Hollingshed v. Levine, 307 A.D.2d 850, 851 (N.Y. App. Div. 1st
Dep't 2003).

the gun's presence in the house was dictated by the employer's regulations. However, it did not arise in the course of employment, because the injury was not received while the employee was performing the work for which he was employed."). The injury was incurred by Plaintiff in his role as a patient; the medical information related to his status as an NYU patient. Accordingly, Plaintiff's claim for improper disclosure of medical information is not precluded by the WCL.

### b. Negligence and Gross Negligence

Plaintiff also alleges negligence and gross negligence against NYU, stating that "NYU owed a duty to Plaintiff to hire and train employees to protect the confidentiality of patients' medical information and to establish procedures to prevent the improper access and disclosure of confidential medical information." (Compl. ¶ 107.)

At their core, Plaintiff's negligence claims are negligent hiring and supervision claims. Ordinarily, such claims are precluded by the WCL. Maas, 253 A.D.2d at 3 (citing cases and indicating that "an employee may not sue his or her employer for injuries caused by negligent supervision [or] negligent hiring" (internal citations omitted)); see also Miller v. Astucci U.S. Ltd., No. 04 CIV. 2201 (RMB), 2007 WL 102092, at *6 (S.D.N.Y. Jan. 16, 2007) (discussing gross negligence). However, in this

22

case, the claims arise from Plaintiff's status as an NYU
patient, not his status as an employee, as with the related
improper disclosure allegation. Accordingly, the negligence and
gross negligence claims are not precluded by the WCL, and NYU's
Motion to Dismiss with respect to Counts IV and V is DENIED.

### 3.    Legal Standard for Improper Disclosure of
Medical Information

Because the Court has determined that Plaintiff's improper
disclosure is not precluded by the WCL, it must address
Defendants' argument that Plaintiff does not allege sufficient
facts to withstand a Motion to Dismiss.

"To state a claim for breach of fiduciary duty, plaintiff
must allege '(1) the existence of a fiduciary relationship; (2)
a knowing breach of a duty that relationship imposes; and (3)
damages suffered.'" Trautenberg v. Paul, Weiss, Rifkind, Wharton
& Garrison L.L.P., 351 F. App'x 472, 474 (2d Cir. 2009) (quoting
Carruthers v. Flaum, 388 F. Supp. 2d 360, 381 (S.D.N.Y. 2005).

Under the doctrine of respondeat superior, employers,
including hospitals and medical corporations, may be held
vicariously liable for the wrongful acts of their employees if
those acts were within the scope of employment and were
committed in furtherance of the employer's business. Doe v.
Guthrie Clinic, Ltd., 22 N.Y.3d 480, 484 (N.Y. 2014). The New
York Court of Appeals has applied this doctrine in the context

of improper disclosure of medical information, holding that, "a
medical corporation's duty of safekeeping a patient's
confidential medical information is limited to those risks that
are reasonably foreseeable and to actions within the scope of
employment." Id. at 485. The Court further held:

> In cases where an injured plaintiff's cause of action
> fails because the employee is acting outside the scope
> of employment, a direct cause of action against the
> medical corporation for its own conduct, be it negligent
> hiring, supervision or other negligence, may still be
> maintained. A medical corporation may also be liable in
> tort for failing to establish adequate policies and
> procedures to safeguard the confidentiality of patient
> information or to train their employees to properly
> discharge their duties under those policies and
> procedures.

Id. (internal citation omitted).

> ### 4.  Whether Plaintiff Alleges Sufficient Facts for Improper Disclosure of Medical Information as against Individual Defendants

There are no allegations in the Complaint that Beale,
Mherabi, or Bushman accessed or disclosed Plaintiff's medical
information. Thus, Count III is DISMISSED as against Beale,
Mherabi, and Bushman.

There are also insufficient allegations to make out a claim
for improper disclosure of medical information against Long.
Although Plaintiff alleges that Long accessed his medical
information (Compl. ¶¶ 37, 52-54), he does not allege that she

disclosed the information to anyone. Accordingly, Count III is DISMISSED as against Long.[5]

Because Plaintiff does not allege sufficiently that any Individual Defendant improperly disclosed Plaintiff's medical information, NYU cannot be held liable for such a disclosure under the reasoning of Guthrie Clinic. Furthermore, it does not appear to the Court that Long was acting within the scope of her employment. Compare Guthrie Clinic, 22 N.Y.3d at 485 with Ira S. Bushey & Sons, Inc. v. United States, 398 F.2d 167, 172 (2d Cir. 1968).[6] Accordingly, based on the facts alleged in the Complaint, Plaintiff does not sufficiently allege that NYU improperly disclosed his medical information. Count III is thus DISMISSED as against NYU.[7]

## III.   MOTION FOR LEAVE TO AMEND THE COMPLAINT

Plaintiff seeks leave to amend his Complaint to include additional allegations related to Beale, Mherabi, and Bushman's

---

[5] The Court does not address whether Long owed Plaintiff a fiduciary duty.

[6] Plaintiff has alleged that Long was "acting within the scope of . . . employment." (Compl. ¶ 103.) This is a legal conclusion, not an asserted fact.

[7] As with the allegations against Long, it is not clear to the Court whether NYU made its own disclosure (such as a constructive disclosure by failing to prevent improper access to patients' medical records) or whether NYU's liability would depend only on respondeat superior.

involvement in the violation of his FMLA rights. Plaintiff also seeks to add allegations related to the alleged tort violations.

A. Legal Standard for Motion to Amend

Leave to amend shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may deny leave to amend on grounds of bad faith, undue prejudice to the opposing party, repeated failures to cure deficiencies in amendments previously allowed, or futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962). An amendment is futile where it fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012). "When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991), abrogated on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993).

B. FMLA Interference and Retaliation

The economic reality test, discussed above in Part II.B.1, applies here as well in determining whether an individual is an employer for purposes of the FMLA.

1.    Application to FMLA Charges Against Beale

Plaintiff seeks to amend to allege that, as the Vice President of Epic Applications, Beale had management and supervisory authority over Plaintiff's department, with authority over personnel and payroll decisions, ability to hire and fire employees, the power to set work schedules, dictate work locations, issue work assignments, and conduct performance reviews. (FAC ¶ 15.) These allegations are largely a "formulaic recitation of the elements" of who constitutes an employer under the economic reality test. See Iqbal, 556 U.S. at 678. These allegations alone are thus insufficient to survive a motion to dismiss.

Plaintiff also seeks to amend to allege, on information and belief, that Beale, as Long's direct supervisor, "was aware of, condoned and/or assisted in attempting to force Plaintiff to work while on FMLA leave, attempting to force Plaintiff to end his FMLA leave early and/or in forcing Plaintiff to work excessive hours after his return from leave." (FAC ¶ 31; see also id. ¶ 40.) These allegations also are too bare and conclusory to withstand a motion to dismiss. Plaintiff does not furnish any facts that support the contention that Beale was aware of, condoned, or assisted Long's actions. Furthermore, mere awareness does not rise to the level of control discussed in the economic reality test.

27

Plaintiff asserts in the Proposed Amended Complaint that Beale had access to NYU's database and had reason to access his medical records for the purpose of determining the status of his medical condition and to try to undermine his FMLA and privacy rights. (Id. ¶ 59.) Although Beale's access to NYU's database is a plausible factual allegation, her reasons for accessing it are dependent on other factual allegations, which, as discussed above and below, are insufficient.

Plaintiff further charges that Beale conspired with Long to give him a negative performance review (id. ¶¶ 82-83) and that Beale was involved in the decision to demote him to Clinical Analyst 1. (Id. ¶ 87.) Plaintiff again offers no facts to support these conclusions. The allegation that Beale was involved in his demotion was a new charge in the Proposed Amended Complaint and, as with the allegations in Paragraphs 15 and 31, it appears to the Court to have been inserted to mimic the case law that applies the economic reality test. Although these assertions may theoretically support the first and third prongs of the test, Plaintiff must still provide some plausible factual support.

It is clear that Plaintiff's allegations against Beale in the Proposed Amended Complaint cannot withstand a 12(b)(6) motion when comparing the instant case to others applying the economic reality test. For example, in Smith v. Westchester

County, 769 F. Supp. 2d 448 (S.D.N.Y. 2011), the plaintiff
survived a motion to dismiss after alleging that he sent a
complaint letter to one defendant; another defendant "controlled
[his] being called for and placed on attendance review, sent
[him] home upon his return to work for failing to obtain
unnecessary medical clearance, and interfered with his
participation in [an employee assistance program"; a third
defendant wrongfully placed him on attendance review; and a
fourth sent him a letter denying his request for an extension of
his FMLA leave. Id. at 476 (internal citations omitted).
Similarly, the plaintiff in Spinelli v. City of New York, No. 13
CIV. 7112 GBD SN, 2014 WL 4828814 (S.D.N.Y. Sept. 24, 2014),
withstood a motion to dismiss where she alleged that one
defendant assigned her a rigid morning arrival time and another
assigned her to the reception desk and assigned her specific
tasks. Id. at *4; but see Hernandez v. Habana Room, Inc., No. 11
CIV. 1264 RMB JCF, 2012 WL 423355, at *3 (S.D.N.Y. Feb. 9,
2012).[8] Whereas the plaintiffs in Smith and Spinelli provided
specific factual allegations of control over their work and
their FMLA leave by various defendants, Plaintiff here does not.

---

[8] Hernandez involved a Fair Labor Standards Act violation, rather
than an FMLA violation. The Second Circuit has noted the
similarity between the definitions of "employer" in the two Acts
and applied the economic reality test used in FLSA cases to FMLA
cases. Graziadio, 817 F.3d at 422. The Hernandez court, however,
did not apply the economic reality test.

There are no facts alleged in the Proposed Amended Complaint
which would support Plaintiff's notions that Beale conspired
against Plaintiff or was involved in the decision to demote him.

           2.    Application to FMLA Charges Against Mherabi

     Plaintiff seeks to amend to allege that Mherabi, as the
Chief Information Officer, had management authority of
Plaintiff's department, including over Beale, with authority
over personnel and payroll decisions, ability to hire and fire
employees, the power to set work schedules, dictate work
locations, issue work assignments, and conduct performance
reviews. (FAC ¶ 16.) Plaintiff alleges, on information and
belief, that Mherabi, as Long's direct supervisor, was "aware
of, condoned and/or assisted in attempting to force Plaintiff to
work while on FMLA leave, attempting to force Plaintiff to end
his FMLA leave early and/or in forcing Plaintiff to work
excessive hours after his return from leave." (Id. ¶ 32.)
Plaintiff asserts that Mherabi had access to NYU's database and
had reason to access his medical records for the purpose of
determining the status of his medical condition and to try to
undermine his FMLA and privacy rights. (Id. ¶ 59.) Plaintiff
also alleges that Mherabi aided and abetted Long and Bushman's
conduct. (Id. ¶ 83.) Plaintiff further alleges that Mherabi was
involved in the decision to demote him. (Id. ¶ 87.) For the

reasons discussed above with respect to the FMLA allegations against Beale, these allegations are also insufficient here.

Plaintiff also moves to amend to allege that Mherabi refused to discuss Beale, Long, and Bushman's conduct with Plaintiff despite Plaintiff's attempts to do so. (Id. ¶ 83.) The Court takes this charge more seriously because it speaks more directly to Mherabi's potential control over Plaintiff's FMLA leave and subsequent harassment by Long, given that Long was allegedly one of Long's supervisors. Ultimately, however, this allegation is still insufficient because Plaintiff has not in any way established a chain of command with respect to FMLA leave or grievances. See Graziadio, 817 F.3d at 423 (tying the question of control by individual specifically to Plaintiff's rights under the FMLA). Plaintiff does not describe in the Proposed Amended Complaint how FMLA leave is processed at NYU or what role Mherabi plays in that process. (See id. ¶ 18.) Allowing Plaintiff to proceed against Mherabi here could open the door to allow plaintiffs alleging FMLA violations to proceed against supervisors who do not specifically meet the definition of "employer" under the economic reality test.

3.  Application to FMLA Charges Against Bushman

Plaintiff seeks to amend the Complaint to allege that, as the Chief Medical Information Officer, Bushman was involved in

scheduling and personnel decisions in Plaintiff's department.
(FAC ¶ 33.) Plaintiff also alleges, on information and belief,
that Bushman was "aware of, condoned and/or assisted in
attempting to force Plaintiff to work while on FMLA leave,
attempting to force Plaintiff to end his FMLA leave early and/or
in forcing Plaintiff to work excessive hours after his return
from leave." (Id. ¶ 33.) According to Plaintiff, Bushman had
access to NYU's database and had reason to access his medical
records for the purpose of determining the status of his medical
condition and to try to undermine his FMLA and privacy rights.
(Id. ¶ 59.) The Court's reasoning with respect to Beale applies
here as well.

    Because Plaintiff's FMLA allegations against Beale,
Mherabi, and Bushman in the Proposed Amended Complaint are
factually insufficient, the Court DENIES Plaintiff's Motion for
Leave to file this Proposed Amended Complaint with respect to
the additional FMLA-related allegations. While Plaintiff is not
permitted to include merely conclusory allegations as against
Beale, Mherabi, and Bushman, it may be possible for him to
include sufficient factual allegations to withstand a motion to
dismiss. Accordingly, Plaintiff is GRANTED leave to amend with
respect to Counts I and II as against Beale, Mherabi, and
Bushman. Plaintiff must, however, amend to include additional

allegations beyond what is included in the Proposed Amended Complaint.

   C. Tort Claims

The same legal standard with respect to improper disclosure of medical information, discussed in Part II.C.3, applies here.

In the Proposed Amended Complaint, Plaintiff seeks to include additional allegations related to Beale, Mherabi, and Bushman's access to NYU's electronic database. (Id. ¶ 59.) These additional allegations relate to Plaintiff's improper disclosure claims. They are, however, insufficient to survive a 12(b)(6) motion because they do not actually include allegations that Beale, Mherabi, and Bushman actually accessed or disclosed Plaintiff's medical information.

Accordingly, Plaintiff's Motion for Leave to Amend as set forth in his Proposed Amended Complaint to include additional allegations related to his tort claims is DENIED. However, it may be possible for Plaintiff to allege additional factual allegations that would be sufficient to support an improper disclosure claim as against all Defendants, so Plaintiff is GRANTED leave to amend with respect to Count III.[9]

_____

[9] Plaintiff also seeks to amend his initial Complaint to include: "[Plaintiff's NYU medical] services were unrelated to [NYU's] employment, were not related to any injury caused to Plaintiff as a result of his employment and were not provided to Plaintiff as an employee of [NYU] but were obtained by Plaintiff as a

IV.   CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss Counts I and II as against Beale, Mherabi, and Bushman and Count III as against all Defendants are GRANTED. NYU's Motion to Dismiss Counts IV and V is DENIED. Plaintiff's Motion for Leave to Amend is DENIED because the proposed amendments would be futile, but Plaintiff is GRANTED leave to amend to include additional facts that could sustain the charges discussed.

If Plaintiff chooses to amend, he must file a First Amended Complaint within 45 days of the date of this Order. Defendants must then respond to that Complaint within 30 days after it has been filed.

SO ORDERED.

DATED:     New York, NY
           March 29, 2017

                              Deborah A. Batts
                              U.S. District Judge

---

member of the general population." (FAC ¶ 44.) Because the Court denied the Motions to Dismiss insofar as they related to WCL preclusion, Plaintiff need not include this amendment in the any future Amended Complaint.